**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**RANDY L. THORNTON,**

    **Movant,**

**v.**          **Case No. 2:16-cv-05348**
            **Case No. 2:04-cr-00225**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Movant, Randy L. Thornton's (hereinafter "Defendant") Emergency Motion to Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 134). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

### *Defendant's federal conviction and prior post-conviction filings*

On May 12, 2005, Defendant was convicted by a jury[1] in this United States District Court of two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), which carried a maximum sentence of ten years in prison on each count. However, at sentencing, which occurred over two days on October 20, 2005 and January

---

1  The United States of America's Response mistakenly states that Defendant pled guilty to the charges. (ECF No. 138 at 1).

19, 2006, this Court found that Defendant had committed three prior felony offenses categorized as "violent felonies" under 18 U.S.C. § 924(e)(2)(B) (the "Armed Career Criminal Act" or "ACCA").[2]  As specified in both counts of the Indictment upon which he was convicted, Defendant was previously convicted of the following felony offenses:

- 1973 - unarmed robbery in violation of Ohio Rev. Code § 2901.12[3]
- 1975 - escape in violation of Ohio Rev. Code § 2921.34
- 1975 - burglary in violation of Ohio Rev. Code § 2911.12
- 1975 - felonious assault in violation of Ohio Rev. Code § 2903.11
- 1980 - attempted robbery by violence in violation of W. Va. Code § 61-2-12
- 1980 - malicious wounding in violation of W. Va. Code § 61-2-9

(ECF No. 12 at 2-3).[4]  As a result of these prior convictions, Defendant was classified as an armed career criminal, and was subject to a mandatory minimum sentence of fifteen

---

2  The ACCA provides for a sentencing enhancement for a felon possessing a firearm or ammunition when the defendant has three prior convictions for violent felonies and/or serious drug offenses.   18 U.S.C. §§ 922(g)(1) and 924(e)(1).   The ACCA defines a "violent felony" as a crime punishable ... by imprisonment for a term exceeding one year ... that

> (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)      is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another.</u>

18 U.S.C. § 924(e)(2)(B) (Emphasis added).   Subsection (i) is known as the "elements" or "force" clause (hereinafter "the force clause").   The first part of subsection (ii) is known as the "enumerated offense" clause.   The emphasized portion of subsection (ii) is known as the "residual" clause.

3  At the time of Defendant's conviction, the crime of robbery was contained in Ohio Rev. Code Ann. § 2901.12, which is now the venue statute.   The crime of robbery has since been codified at section 2911.02, as cited by Defendant in his section 2255 motion.   However, the applicable version of the statute for purposes of these proceedings is section 2901.12, which was in effect when Defendant committed the offense and was convicted thereof.

4  Defendant has two other convictions for wanton endangerment in violation of W. Va. Code § 61-7-12, and attempted murder in violation of W. Va. Code § 61-11-18, which the parties agree do not qualify as ACCA predicate offenses in the instant matter because Defendant was convicted of such crimes after he committed his § 922(g) offenses.   *See United States v. Pressley*, 359 F.3d 347, 349-351 (4th Cir. 2004).   Additionally, according to Defendant's Presentence Investigation Report ("PSR"), Defendant was also convicted in 1980 of escape in West Virginia.   That conviction was not listed in the indictment and the PSR does not cite the statute under which that conviction occurred.   Furthermore, the parties failed to address that conviction in any of their briefing.   However, as noted in footnote 5 herein, the West Virginia escape was one of the three predicate offenses relied upon by Judge Copenhaver in applying the ACCA enhancement.

years (or 180 months) of imprisonment, pursuant to 18 U.S.C. § 924(e)(1).[5]    He also received a sentencing enhancement from a level 20 to a level 34 under section 4B1.4(b)(3)(A) of the United States Sentencing Guidelines.[6]    Defendant was sentenced to serve 262 months in prison, followed by a five-year term of supervised release, and he was ordered to pay a $5,000 fine and a $200 special assessment.    (Judgment, ECF No. 118).    Defendant's Judgment was affirmed on appeal.    *United States v. Thornton*, 209 F. App'x 297 (4th Cir. 2006).

Although Defendant has not previously filed a section 2255 motion, on February 3, 2012, he filed a Petition for a Writ of Error Coram Nobis pursuant to 28 U.S.C. § 1651 (ECF No. 115), challenging the ability to pay his fine, which was denied by Judge Copenhaver on May 2, 2012 (ECF No. 122).    Judge Copenhaver further denied a Motion for Reconsideration of that decision on June 6, 2012 (ECF No. 125).

### *The Johnson II decision*

On June 26, 2015, the Supreme Court decided *United States v. Johnson*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), holding that the residual clause of the ACCA is unconstitutionally vague and further finding that imposition of an increased sentence thereunder violates due process.    As noted by the government herein, the Supreme Court

---

5    Although Judge Copenhaver did not specify how any of these crimes satisfied the ACCA criteria, during the sentencing hearing, he referred to all of these crimes as "violent felonies."    (ECF No. 103 at 15). Furthermore, it is clear from the sentencing transcript that Judge Copenhaver specifically relied upon the Ohio unarmed robbery conviction and the West Virginia escape and attempted robbery by violence convictions in making his finding that the ACCA provision applied to Defendant.    (*Id.*) Nevertheless, the court need only find that <u>any</u> three of these convictions qualify as ACCA predicate offenses in order for the enhancement to apply.

6    As applied herein, section 4B1.4(b)(3)(A) of the Guidelines states in pertinent part that, "[t]he offense level for an armed career criminal is the greatest of . . . 34, if the defendant used or possessed the firearm or ammunition in connection with . . . a crime of violence . . . ."    U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(b)(3)(A).

specifically excluded the remainder of the ACCA from its holding in *Johnson II*.   The Court stated, "Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* at 2563.   Thus, a prior conviction may still qualify as a violent felony if it meets the criteria of the force clause contained in section 924(e)(2)(B)(i), or the enumerated offenses of burglary, arson, extortion or crimes involving explosives under section 924(e)(2)(B)(ii).   (ECF No. 138 at 3-4).

On April 18, 2016, the Supreme Court decided *Welch v. United States*, 136 S. Ct. 1257 (2016), in which the Court determined that *Johnson II* changed the substantive reach of the ACCA, and therefore was a substantive, rather than a procedural decision. Therefore, the Court held that *Johnson II* announced a new substantive rule that applies retroactively to cases on collateral review.

### *Defendant's current section 2255 motion and other briefing*

On May 6, 2016, the Office of the Federal Public Defender was appointed to represent Defendant for the purpose of determining whether he qualifies for federal habeas relief in light of *Johnson II*.   (ECF No. 132).   On June 13, 2016, Defendant, by counsel, filed the instant section 2255 motion contending that, after *Johnson II*, he does not have three predicate felony offenses that qualify as violent felonies. (ECF No. 134). Defendant's initial motion conceded that his West Virginia malicious wounding conviction still qualified as a violent felony, and failed to address in any fashion his West Virginia escape conviction, but otherwise asserted that his remaining convictions do not

satisfy either the enumerated offense or force clauses of the ACCA.[7]    Accordingly, he contends that he is entitled to have his current judgment vacated and to be re-sentenced without the ACCA enhancement.    (*Id.* at 15).

On September 9, 2016, the United States of America (hereinafter "the Government") filed a Response to Defendant's section 2255 motion (ECF No. 138), addressing Defendant's Ohio unarmed robbery and felonious assault convictions and his West Virginia robbery by violence conviction.   Although the Government would not concede that Defendant's Ohio burglary conviction is not a violent felony, it did not address the merits thereof in its briefing based upon its contention that Defendant otherwise has four qualifying violent felony convictions (including the West Virginia malicious wounding conviction, which the Government did not address in its Response in light of Defendant's initial concession that it was an ACCA predicate offense).   (ECF No. 138 at 2 n.1).   Furthermore, the Government's briefing does not address either of Defendant's escape convictions.   Thus, the undersigned infers that the Government is not asserting that those convictions are ACCA predicates after *Johnson II* and will not further address those convictions herein.[8]

---

7   While Defendant's initial motion conceded that his West Virginia conviction for malicious wounding still qualified as a violent felony (ECF No. 134 at 4 n.3), his subsequent Reply retracted that concession and asserted that the malicious wounding conviction does not qualify as a violent felony.   (ECF No. 141 at 2-4). This sparked the filing of a Supplemental Response by the Government (ECF No. 142), and the filing of Notices of Additional Authority by both parties (ECF Nos. 143-146).   The undersigned will address the status of West Virginia malicious wounding as a violent felony in the Discussion section *infra.*

8   Even if the government is not conceding that, absent the residual clause, Defendant's escape convictions are no longer ACCA violent felonies, the undersigned does not believe there is sufficient information available in the record for the court to properly analyze whether either of those convictions satisfies the ACCA criteria.   Furthermore, because the undersigned is proposing that Defendant otherwise has three predicate violent felonies, it appears to be unnecessary to further address the escape convictions.

On October 6, 2016, Defendant, by counsel, filed a Reply (ECF No. 141) disputing the Government's contentions concerning his Ohio felonious assault and unarmed robbery convictions and his West Virginia attempted robbery by violence conviction.   As noted in footnote 7 herein, Defendant also retracted his concession concerning his West Virginia malicious wounding conviction and now asserts that it is not a violent felony.

On October 20, 2016, the Government filed a Supplemental Response regarding the status of the malicious wounding conviction (ECF No. 142).   Thereafter, the parties have each filed additional authority concerning the status of West Virginia malicious wounding as a violent felony for ACCA purposes.   (ECF Nos. 143-146).

The undersigned will address each of the prior relevant convictions as necessary in the Discussion section.

## **DISCUSSION**

### A.    **The use of the categorical versus modified categorical approach.**

In determining whether a particular conviction counts as an ACCA predicate offense, courts must take a "categorical" approach.   *Taylor v. United States*, 495 U.S. 575, 602 (1990).   Under this approach, a prior conviction will either count as a violent felony, or not, based solely on the fact of conviction, rather than on facts particular to the individual defendant's case.   *Id.*   Thus, for purposes of the ACCA, courts generally use this approach to determine whether a particular crime categorically qualifies as an enumerated offense, or whether all of the conduct covered by the statute in question categorically requires "violent force," which the Supreme Court has specified is "force capable of causing physical pain or injury."   *Johnson v. United States*, 559 U.S. 133, 140 (2010) (hereinafter "*Johnson I*").

6

However, where a statute defines a predicate offense "more broadly" than that found in the ACCA, or where a statute has multiple, alternative elements of the crime, courts may use a "modified categorical approach" to determine whether the defendant's predicate offense satisfies the ACCA.   *See Mathis v. United States,* 136 S. Ct. 2243 (2016)*; Descamps v. United States*, 133 S. Ct. 2276 (2013).   Such statutes are said to be "divisible," making the comparison of elements harder because one portion of the statute may satisfy one of the ACCA clauses, while another portion does not.

In such circumstances, the court may employ a modified categorical approach in which it "'looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'"   *Mathis*, 136 S. Ct. at 2249 (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *see also Taylor*, 495 U.S. at 602.   However, in order to employ the modified categorical approach, the court must be satisfied that the various ways of committing the crime consist of alternative elements of the crime and not just alternative means of satisfying one element.   *Mathis*, 136 S. Ct. at 2249; *Descamps*, 133 S. Ct. at 2293.

If the alternatives are, indeed, discrete elements, "it is necessary to separate out those offenses listed in the statute that align with Congress's definition [of a violent felony under the ACCA] from those that do not, <u>and</u> to determine which offense formed the basis of the defendant's prior conviction."   *United States v. Faust*, 853 F.3d 39, 51 (1st Cir. 2017).   The Supreme Court has instructed the lower courts to begin by looking to the statutory text and the case law of the state's highest court to determine what the state considers the required elements of the offense to be.   *Mathis*, 136 S. Ct. at 2256; *Faust*,

853 F.3d at 52.   However, "'[i]f state law fails to provide clear answers,' then *Mathis* directs the sentencing court to 'peek at the [record] documents' . . . for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.'"   *Faust*, 853 F.3d at 52 (quoting *Mathis*, 136 S. Ct. at 2256-57).   Significantly, though, if the records do not make plain whether the elements of the defendant's conviction meet the ACCA criteria, then the conviction cannot be used as a predicate under the ACCA.   *Id.* at 60.   As noted in *Mathis*:

> Of course, such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy "*Taylor's* demand for certainty" when determining whether a defendant was convicted of a generic offense.

136 S. Ct. at 2257; *see also Phillips v. United States*, Nos. 2:16-cv-02288-JPM-cgc; 2:02-cr-20435-BBD-1, 2016 WL 3039990 (W. D. Tenn. May 27, 2016) (finding that, where it is unclear whether a conviction necessarily involved the use of physical force, the conviction may not be used as an ACCA predicate offense).   Using these parameters, the undersigned will address whether Defendant's prior convictions qualify as ACCA predicate offenses.

### B.   Defendant's West Virginia malicious wounding conviction is a violent felony.

Despite Defendant's shifting positions concerning the status of his 1980 malicious wounding conviction, the undersigned can quickly dispose of the issue of whether this crime is a proper ACCA predicate offense in light of the recent decision of the United States Court of Appeals for the Fourth Circuit in *United States v. Covington*, 880 F.3d 129 (4th Cir. 2018), in which the court found that "*unlawful* wounding" under W. Va. Code § 61-2-9(a) categorically qualifies as a crime of violence under the force clause of the

career offender guideline of the United States Sentencing Guidelines, USSG § 4B1.2.  *See also United States v. Wilson*, No. 17-4224, 2018 WL 1052943 (4th Cir. Feb. 26, 2018) (finding West Virginia unlawful wounding conviction is a crime of violence under the Guidelines).   Although the career offender guideline uses the term "crime of violence," the force clause therein is worded similarly to that of the ACCA definition of a "violent felony."   Thus, courts often draw from the case law analyzing convictions under the guideline when addressing the same conviction under the ACCA, and vice versa.   *See United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013); *United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012) ("We rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA because the two terms have been defined in a manner that is 'substantively identical.'")

The statute at issue in the instant case, as in *Covington*, is West Virginia Code § 61-2-9(a), [9] which, both in 1980 (when Defendant was convicted), and in 1998 (when Covington was convicted), stated as follows:

> If any person *maliciously* shoots, stabs, cuts or wounds any person, or by any means cause him or her bodily injury with intent to maim, disfigure, disable or kill, he or she, except where it is otherwise provided, is guilty of a felony and, upon conviction thereof, shall be punished by confinement in a state correctional facility not less than two nor more than ten years. If the act is done *unlawfully, but not maliciously*, with the intent aforesaid, the offender is guilty of a felony and, upon conviction thereof, shall either be imprisoned in a state correctional facility not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding $500.

---

9   Although titled "Malicious or unlawful assault," this statute governs the crimes commonly referred to as malicious or unlawful wounding.

W. Va. Code § 61-2-9(a) (emphasis added).   The Fourth Circuit found that this statute is clearly divisible, "in that it lists two separate crimes with different elements and punishments."   880 F.3d at 133.   The Fourth Circuit further found as follows with respect to the unlawful wounding portion of the statute:

> Comparing the elements of the force clause as articulated above, with the elements of the West Virginia offense of unlawful wounding, yields the conclusion that unlawful wounding under § 61-2-9(a) categorically qualifies as a crime of violence under the force clause.   Section 61-2-9(a) applies only to a defendant who "shoots, stabs, cuts or wounds any person, or by any means cause[s] him or her bodily injury with intent to maim, disfigure, disable or kill," W. Va. Code § 61-2-9(a).   The statute's text thus dictates that the minimum conduct required for conviction of unlawful wounding must at least involve physical force capable of causing physical injury to another person.   *See United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017) (concluding that the "'knowingly and willfully inflict[ing] bodily injury' on another person" element of a Virginia criminal offense "squarely matches ACCA's force clause, which requires force that is 'capable of causing physical pain or injury'" (alteration in original) (first quoting Va. Code Ann. § 18.2-55) (then quoting *Johnson*, 559 U.S. at 140, 130 S. Ct. 1265)), *cert. denied*, ––– U.S. ––––, 138 S. Ct. 462, ––– L.Ed.2d –––– (2017).

*Id.* at 133–34.   As noted by the Government in its most recent Notice of Supplemental Authority, the *Covington* Court further found that "the district court's reliance on *United States v. Tores-Miguel*, 701 F.3d 165 (4th Cir. 2012), concerning the use-of-force issue presented by Covington's conviction was error, as was its reliance on hypothetical scenarios."   (ECF No. 146 at 1).

In asserting that his West Virginia malicious wounding conviction is not a violent felony under the ACCA, Defendant relies heavily on *Tores-Miguel*, arguing that a crime that results in physical injury may not actually involve the *use* of physical force. [10]

---

[10]  In *Tores-Miguel*, the Fourth Circuit addressed whether a California threat conviction was a crime of violence for Guideline purposes.   The Court rejected the Ninth Circuit's conclusion that the offense involved force because it was required to result in death or great bodily injury.   Rather, the Fourth Circuit panel found that "a crime may result in death or serious bodily injury without involving the use of physical

However, based upon the Supreme Court's decision in *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) (finding that "the knowing or intentional application of force is a 'use' of force") and the Fourth Circuit's specific finding that *Tores-Miguel* has been abrogated by *Castleman*, *see Burns-Johnson*, 864 F.3d at 318, the undersigned proposes that the presiding District Judge **FIND** that West Virginia Code § 61-2-9(a) necessitates the requisite amount of force to be a violent felony under the ACCA.

Moreover, although *Covington* addressed the offense of unlawful wounding, that crime is a lesser-included offense of malicious wounding, which requires the same elements as unlawful wounding, plus a malicious intent. *See State v. Cavallaro,* 557 S.E.2d 291 (W. Va. 2001); *Butts v. United States*, No. 3:16-cv-7, 2017 WL 6731766 (N.D. W. Va. Sept. 13, 2017) (unlawful wounding is a lesser-included offense of malicious wounding); *State v. Daniel,* 109 S.E. 2d 32, 34 (W. Va. 1959) (malicious wounding requires proof of intent and malice). Clearly, maliciously shooting, stabbing, cutting or wounding a person, or causing them bodily harm with the intent to maim, disfigure, disable, or kill, involves the use or threatened use of violent force. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Defendant's 1980 West Virginia malicious wounding conviction is a violent felony that was properly used as a predicate offense for his ACCA enhancement.

---

force[,]" pointing to poisoning as an example. Defendant's Reply brief also cites other decisions resting on the rationale of *Tores-Miguel*. (ECF No. 141 at 3-4). However, as noted by the Government's Supplemental Responses, *Tores-Miguel* has essentially been abrogated by the Supreme Court's decision in *United States v. Castleman*, 134 S. Ct. 1405 (2014), in which the Court rejected the "poisoning-does-not-equal-physical-force" argument. (ECF No. 142 at 5-12; ECF Nos. 143, 145, 146). Although *Castleman* addressed a misdemeanor domestic violence offense, which are often distinguishable from other violent crimes, the Fourth Circuit recently recognized *Castleman*'s abrogation of *Tores-Miguel* in *United States v. Burns-Johnson*, 864 F.3d 313, 318 (4th Cir. 2017).

### C.     Defendant's West Virginia attempted robbery by violence conviction is a violent felony.

In 1980,[11] Defendant was also convicted in West Virginia of the offense of attempted robbery by violence under W. Va. Code § 61-2-12, which at that time stated as follows:

> If any person commit, or attempt to commit, robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or by other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and upon conviction, shall be confined in the penitentiary not less than ten years.   If any person commit, or attempt to commit, a robbery by any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and upon conviction, shall be confined in the penitentiary not less than five nor more than eighteen years.

W. Va. Code § 61-2-12 (1961).   Thus, the statute addresses two alternative classes of the offense, also distinguishable by two separate penalties.   The Government's briefing recognizes that the first portion of the statute, which appears to be equivalent to Defendant's "attempted robbery by violence" offense, is also known as "aggravated robbery," and the remainder of the statute addresses "non-aggravated robbery."   (ECF No. 138 at 14-16).

Defendant contends that this offense does not meet the force clause and, thus, is not a violent felony under the ACCA because it can be committed without the necessary level of force.   Defendant first notes that the statute does not actually define robbery, which requires the court to defer to the common law definition thereof.   The elements of common law robbery are: "(1) the unlawful taking and carrying away, (2) of money or

---

11   The offense was actually committed in January of 1979.   That fact is of no moment, however, as the applicable statutory language was the same in 1979 and 1980.

goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with the intent to steal the money or goods." *See State v. Wilkerson*, 738 S.E.2d 32, 37 (W. Va. 2013) (quoting *State v. Harless*, 285 S.E.2d 461, 462 (W. Va. 1981)).

Relying upon *Wilkerson*, Defendant contends that "'it is possible to commit robbery . . . without force' because it 'can be perpetrated by simply threatening the use of force.'" 738 S.E.2d at 38. (ECF No. 134 at 10-11). Defendant further contends that the language "force or putting him in fear" are alternative means, not alternative elements. *See State v. Coulter*, 288 S.E.2d 819, 820 (W. Va. 1982) (robbery "may be committed without force by putting a person in fear"). (*Id.* at 11).

Defendant further asserts that the necessary level of force needed to commit robbery in West Virginia allows for minimal contact with the victim. Thus, he contends that such force does not meet the level of physical force required to be a violent felony under the ACCA. In support of this contention, Defendant relies on the Fourth Circuit's decision in *United States v. Gardner*, 823 F.3d 793 (4th Cir. 2016), in which the Court found that, because a North Carolina burglary statute allowed *de minimis* contact to satisfy an element requiring "violence or fear," such crime did not satisfy the ACCA force clause. Defendant seeks a similar finding here.

Instead, the Government argues that aggravated robbery in West Virginia is recognized as one of the most serious and violent offenses, as evidenced by its harsh penalty. *See State v. Glover*, 355 S.E.2d 631, 640 (1987) ("Aggravated robbery has always been regarded as a crime of the gravest character."); *State v. Ross*, 402 S.E.2d 248, 251 (W. Va. 1990) ("Aggravated robbery in West Virginia has been recognized as a crime that involves high potentiality for violence and injury to the victim involved.") (ECF No.

138 at 18).    The Government's Response further asserts that the SCAWV in *Harless,*

*supra*, specifically explained that "the distinguishing feature between aggravated and

nonaggravated robbery . . . is that the former requires the utilization of physical force or

the use of a deadly weapon against the victim; the latter crime requires only that the victim

be placed in fear of bodily injury."    285 S.E.2d at 713.    (ECF No. 138 at 16).    The

Government further contends that the *Harless* Court found that "aggravated robbery is

defined as the unlawful taking and carrying away of money or goods from the presence of

another, <u>by the use of force or violence on the victim</u>, or through the use of a dangerous

or deadly weapon or instrumentality, and with the intent to steal such property."    *Id.* at

712 n.8 (emphasis added).    (*Id.*)

　　　　The Government further asserts that Defendant's reliance on *Gardner* is misplaced

and that aggravated robbery in West Virginia requires more than *de minimis* force.    Its

Response states "Aggravated robbery in West Virginia explicitly involves a taking by

physical force (*i.e.,* "committing violence to the person") or the threat of physical force

(*i.e.*, "the presentation of a deadly weapon.")."    (*Id.* at 17).    The government further

asserts that the statutory language clearly demonstrates that the force required to be used

or threatened is more than minimal, including strangulation, beating, and threat of a

deadly weapon.    (*Id.* at 19).    Thus, the Government contends that West Virginia

aggravated robbery statute easily meets the ACCA's force requirement.    (*Id.* at 18).    The

undersigned agrees.

　　　　On October 12, 2017, the Fourth Circuit decided *United States v. Salmons*, 873

F.3d 466 (4th Cir. 2017), holding that West Virginia aggravated robbery is categorically a

crime of violence under the career offender guideline.    For similar reasons, the

undersigned believes that West Virginia aggravated robbery satisfies the ACCA's force clause.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant's 1980 West Virginia conviction for attempted robbery by violence (also known as aggravated robbery) is a violent felony that qualifies as a predicate offense for Defendant's ACCA enhancement.

### D.    Defendant's Ohio unarmed robbery conviction is a violent felony.

In 1973, Defendant was convicted of unarmed robbery in violation of Ohio Rev. Code Ann. § 2901.12, which then provided that "No person, by force or violence, or by putting in fear, shall steal from the person of another anything of value."   Ohio Rev. Code Ann. (1972 Supp.) § 2901.12.   (ECF No. 138, Ex. B).   As noted by the Government, Defendant's initial section 2255 motion incorrectly cites the current version of the statute. (ECF Nos. 134 at 4; ECF No. 138 at 5).   Thus, Defendant's arguments made therein concerning this conviction are not accurate or helpful.

The Government's Response, on the other hand, cites to the applicable version of the statute and asserts that Defendant's 1973 Ohio conviction for unarmed robbery meets the force clause of the ACCA.   The Government contends that the robbery statute is not divisible and, thus, the court must determine whether it categorically satisfies the force clause.   (ECF No. 138 at 5-6).   The Government further contends that Ohio robbery requires force exerted upon a <u>person</u>.   (*Id.* at 6).   In support of this contention, the Government asserts that Ohio state law distinguishes between robbery, as a crime against a person, and larceny, as a crime related to property.   *See Ohio v. Carlisle*, 181 N.E.2d 517, 519 (Ohio Ct. Common Pleas 1961); *State v. Davis*, 451 N.E.2d 772, 776 (Ohio 1983)

(holding that robbery's elements requiring the use or threat of immediate use of force against another means force against a person).

Additionally, the Government asserts that the level of force required for Ohio robbery constitutes "violent force" or "force capable of causing physical pain or injury to another". *See, e.g., State v. Weaver*, 1993 WL 441799 at *2 (Ohio Ct. App. 1993) (at common law, robbery required "force or violence that harmed the victim or the threat of it that put the victim in fear of such harm."); *State v. Furlow*, 60 N.E.2d 1112, 1113 (Ohio Ct. App. 1982) (the force necessary to elevate a theft to a robbery involves actual or potential harm to the victim); *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) ("taking by force or violence entails the use of physical force" and "a taking by intimidation involves the threat to use such force."); *United States v. Hill*, No. 14-cv-3872, 2016 WL 4120667 *6 (2d Cir. Aug. 3, 2016) (explaining that the use or threat to use physical force by putting the victim in fear of injury through such means categorically rendered Hobbs Act robbery a crime of violence under 18 U.S.C. § 924(c)(3)).

Conversely, Defendant's Reply asserts that Ohio separately defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."   Ohio Rev. Ann. Code § 2911.01(A)(1).   Defendant contends that this definition is broader than the definition contained in *Johnson I*, and he disputes the Government's argument that such definition is narrowed by the essential elements of robbery.   (ECF No. 141 at 9).   Defendant further contends that the use of force "against another" does not require use of force against a person, but could include a threat to use force against a thing, such as personal property (Defendant uses the example of "give me your money or I'll set fire to your car.")   Defendant further states, "[i]f the definition of

16

robbery superseded the general definition of force then both provisions would not be so frequently cited in cases . . . ."   (ECF No. 141 at 9-10).

Defendant further discusses the Fourth Circuit's decision in *United States v. Gardner*, 823 F.3d 793 (4th Cir. 2016), which analyzed North Carolina's robbery statute and found that it did not involve the requisite level of force to satisfy that element under the ACCA because *de minimis* contact could satisfy the element of violence or fear.   He also relies on similar holdings by the Second, Eighth and Ninth Circuits addressing robbery statutes in New York, Arkansas and Massachusetts.   *See United States v. Jones*, No. 15-cr-1518, 2016 WL 3923838 (2d Cir. July 21, 2016), *vacated on other grounds*, 838 F.3d 296 (Oct. 3, 2016); *United States v. Eason*, 829 F.3d 633 (8th Cir. 2016); *United States v. Parnell*, 818 F.3d 874 (9th Cir. 2016).   (ECF No. 141 at 10-11).   Based upon these and other holdings cited in his brief, Defendant contends that his Ohio unarmed robbery conviction did not require the use of violent force against another person and, thus, does not qualify as a violent felony under the ACCA's force clause.   (*Id.* at 11).

Upon an extensive review of state and federal case law addressing various versions of the Ohio robbery statute (all of which analyze subsequently amended versions of the statute), the undersigned has found that courts are deeply divided with respect to whether this crime qualifies as a violent felony under the force clause of either the ACCA or the career offender guideline.   *Compare United States v. Mansur*, 375 F. App'x 458 (6th Cir. 2010) (1988 Ohio attempted robbery is a violent felony under force clause of ACCA); *United States v. Sanders*, 470 F.3d 616, 623-24 & n.6 (6th Cir. 2006) (1981 Ohio robbery is a violent felony under the force clause of the ACCA); *United States v. Ginter*, No. 5:15-cv-7414, 2016 WL 347663 (E.D. Ky. Jan. 28, 2016), *vacated on other grounds by Ginter*

*v. United States*, No. 16-5377, 2017 WL 4570519 (6th Cir. June 12, 2017) (1984 Ohio robbery is a violent felony under force clause of ACCA); *United States v. Turner*, No. 3:14CR441, 2016 WL 7407514 (N.D. Ohio Dec. 22, 2016) (1995 Ohio robbery is a violent felony under force clause of ACCA); and *United States v. Campbell*, No. 3:16-cr-00005, 2017 WL 3328538 (E.D. Ky. Aug. 4, 2017) (2013 third degree robbery is a crime of violence under the force clause of the career offender guideline) *with United States v. Yates*, 866 F.3d 723 (6th Cir. 2017) (1999 Ohio robbery does not meet force clause of the career offender guideline); *United States v. Johnson*, 708 F. App'x 245 (6th Cir. Sept. 12, 2017) (1982 and 1983 robbery offenses do not meet force clause of ACCA); *United States v. Nagy*, 144 F. Supp.3d 928 (N.D. Ohio 2015) (1996 Ohio robbery does not meet force clause of ACCA); and *United States v. Litzy*, 137 F. Supp.3d 920 (S.D. W. Va. 2015) (Chambers, C.J.) (2001 Ohio robbery is not a crime of violence under the force clause of the career offender guideline).    Even the judges of this District Court have not agreed on the treatment of Ohio robbery under these career offender provisions.    While in *Litzy*, Judge Chambers found that the 2001 version of the Ohio robbery statute did not meet the force clause of the career offender guideline, Judge Copenhaver, the presiding District Judge herein, more recently found that a 1997 Ohio robbery conviction did satisfy the force clause of the career offender guideline.    *See Winbush v. United States*, No. 2:13-cv-24122, 2017 WL 1206008 (Mar. 31, 2017), *appeal filed, United States v. Winbush*, No. 17-7148 (4th Cir. Aug. 30, 2017).

Nevertheless, cases such as *McNeal* and *Hill, supra*, emphasize that federal courts have uniformly ruled that a taking "by force and violence" entails the use of physical force and that a taking by "intimidation" or "putting in fear" involves the threat to use such

18

force.   S*ee also United States v. Walker*, No. 3:15-cr-49, 2016 WL 153088, *5 (E.D. Va.

Jan. 12, 2016) ("[A]ny act or threatened act which engenders a fear of injury implicates

force and potential force."); *United States v. Matthews*, 689 F.App'x 840, 845 (6th Cir.

2017) (Michigan unarmed robbery requiring that element of being put into fear of injury

satisfied force clause of ACCA).   Moreover, the Ohio appellate courts have recognized

that more than *de minimis* force is necessary to commit robbery.   *State v. Furlow*, 608

N.E.2d 1112, 1113 (Ohio Ct. App. 1992) (snatching a wallet from victim's hand not

sufficient to constitute robbery); *State v. Weaver*, 1993 WL 441799 at *2 (Ohio Ct. App.

1993) (at common law, robbery required "force or violence that harmed the victim or the

threat of it that put the victim in fear of such harm."); *State v. Pillow*, No. 07CA095, 2008

WL 4858358 (Ohio 2008) (use of physical force that posed actual or potential harm to

persons is necessary to commit robbery).

Based upon the rationale of cases such as *McNeal* and *Hill*, and the holdings of the

Ohio appellate courts finding that robbery requires a use of force that is physically exerted

against a victim, or a threat that puts someone in fear of such force, the undersigned is

persuaded that Defendant's Ohio robbery conviction is an offense that qualifies as a

violent felony under the ACCA.   Accordingly, the undersigned proposes that the

presiding District Judge **FIND** that Defendant's Ohio unarmed robbery conviction is a

violent felony that qualifies as a predicate conviction under the ACCA.

### E.    Defendant's burglary conviction is not a violent felony.

Although not discussed in the briefing beyond the Defendant's initial motion, the

undersigned addresses Defendant's 1975 Ohio burglary conviction in case the District

Court should determine that it is necessary to look beyond the convictions previously

analyzed herein.   In 1975, Ohio codified burglary in Ohio Rev. Code Ann. § 2911.12, as follows:

> No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense . . . . or any felony.

Ohio Rev. Code Ann. § 2911.12 (A).   The Ohio Revised Code defined occupied structure as follows:

> Sec. 2909.01.   As used in sections 2909.01 to 2909.07 of the Revised Code, an "occupied structure" is any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
>
> > (A)   Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;
> >
> > (B)   Which at the time, is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;
> >
> > (C)   Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present;
> >
> > (D)   In which at the time any person is present or likely to be present.

Ohio Rev. Code Ann. § 2909.01.

Ohio's burglary statute was previously determined to be broader than the generic burglary definition found in *Taylor*, 495 U.S. at 599.   *See United States v. Lane,* 909 F.2d 895, 902 (6th Cir. 1990).   The text of the Ohio burglary statute is similar to that of the Iowa statute addressed in *Mathis* and the West Virginia statute addressed in *United States v. White*, 836 F.3d 437 (4th 2016), to the extent that all of these statutes identify a

broad range of places that can qualify as an "occupied structure," which amount to alternative means of committing an element of one crime, not alternative elements of what amounts to separate crimes.   Accordingly, based upon *Mathis* and cases with similar holdings, the undersigned proposes that the presiding District Judge **FIND** that the Ohio burglary statute is not divisible, as it identifies various factual means of how a crime may be convicted, but not alternative crimes, and, therefore, the modified categorical approach is not warranted in this case.   Furthermore, analyzed strictly under the categorical approach, the undersigned proposes that the presiding District Judge **FIND** that Ohio burglary is broader than the generic definition of burglary under the ACCA and, therefore, Defendant's burglary offense does not qualify as a violent felony thereunder.

### F.    The court should decline to address Defendant's Ohio felonious assault conviction.

Defendant further contends that his 1975 Ohio felonious assault conviction is not a violent felony that can serve as an ACCA predicate offense.   On the other hand, the Government asserts that this crime is a violent felony because it meets the force clause of the ACCA.   At the time of Defendant's conviction in 1975, the crime of felonious assault was governed by Ohio Rev. Code Ann. § 2903.11(A), which provided as follows:

No person shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

Ohio Rev. Code Ann. § 2903.11(A) (1975 replacement vol.).   (ECF No. 138, Ex. E).   The Government contends that this statute is divisible, allowing the court to apply the modified categorical approach to determine which elements are applicable to Defendant's conviction.   The Government's Response states:

> The felonious assault statute contains two distinct categories of crimes. First, the statute criminalizes knowingly causing serious physical harm to another.   Second, it criminalizes knowingly causing physical harm to another by use of a deadly or dangerous weapon or ordnance, as well as attempts to do the same.   The second category contains an additional element - proof that a defendant used a deadly weapon or dangerous ordnance, and does not require proof of serious physical harm, because it covers attempts.

(ECF No. 138 at 11).   Defendant does not dispute that this statute is divisible.   Rather, Defendant simply asserts that the essential elements of the offense, regardless of which alternative is applicable to him, do not require the necessary level of force under *Johnson I*.   Again, Defendant largely relies upon *Tores-Miguel*, *supra*, 701 F.3d at 168, in making this argument.   (ECF No. 134 at 9-10; ECF No. 141 at 5-6).

The undersigned believes that this statute is divisible.   Accordingly, the undersigned further believes it is appropriate to review available *Shepard* documents to confirm under which alternative elements of the statute Defendant was convicted.   The Government's Response indicates that Defendant's indictment and guilty plea documents track the language in section 2903.11(A)(2), stating that Defendant "knowingly cause[d] serious physical harm to William Andrews by means of a deadly weapon . . . ."   (ECF No. 138 at 12 and Exs. F and G).

Thus, considering only the second section of the statute, the Government further asserts that knowingly causing or attempting to cause physical harm to another by the use

of a deadly weapon or dangerous ordnance "requires proof that a deadly weapon or dangerous ordnance was used to intentionally cause or attempt to cause physical harm" and, consequently, "violent physical force is a necessary element." (*Id.* at 12) (citing *United States v. Anderson*, 695 F.3d 390, 400 (6th Cir. 2012), which analyzed Ohio's aggravated assault and felonious assault statutes as crimes of violence under the ACCA and found that those crimes satisfied the force clause).[12]   The Government also cites to a decision of the Fourth Circuit in which the Court found that Ohio felonious assault was a crime of violence under the career offender guideline. *United States v. Clark*, 131 F. App'x 29 (4th Cir. 2005).   As noted by the Government, however, in so finding, the *Clark* Court appeared to rely upon both the force clause and the residual clause.

Recently, relying on *Anderson*, the Sixth Circuit issued two other decisions finding that Ohio felonious assault is a violent felony under the ACCA and a crime of violence under the Sentencing Guidelines, respectively. *See Williams v. United States*, 875 F.3d 803 (6th Cir. 2017); *United States v. Burris*, No. 16-3855, 2017 WL 6368852 (6th Cir. Dec. 13, 2017).   However, on February 28, 2018, the Sixth Circuit vacated both of those decisions and granted rehearing *en banc* in both matters, calling into doubt the soundness of the holding in *Anderson*.[13]   Thus, in light of the uncertainty surrounding the status of Ohio felonious assault in Ohio's home circuit, and because the court has found that

---

12   The undersigned notes that *Anderson* addressed a later version of the statute, which added a section (B), which criminalizes engaging in sexual conduct without disclosing HIV positive status, which was not relevant in *Anderson* and is not relevant herein.

13   Outside of Ohio federal courts within the Sixth Circuit, which have followed *Anderson*, and the Fourth Circuit's decision in *Clark* discussed above, the undersigned has been unable to locate any federal authority analyzing whether Ohio felonious assault is a violent felony under the ACCA or a crime of violence under the Guidelines.

Defendant has three other ACCA predicate convictions, the undersigned finds it unnecessary to propose a ruling concerning Defendant's felonious assault offense.

### G.    Defendant is not entitled to relief under 28 U.S.C. § 2255.

Upon review of the record in light of *Johnson II* and *Welch*, the undersigned proposes that the presiding District Judge **FIND** that Defendant's prior West Virginia convictions for malicious wounding and attempted robbery by violence and his Ohio conviction for unarmed robbery still qualify as violent felonies that may serve as three predicate offenses for Defendant's ACCA enhanced sentence.   Accordingly, Defendant does not qualify for any relief under 28 U.S.C. § 2255 after *Johnson* and *Welch*.

## <u>RECOMMENDATION</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 134) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.

24

Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant, and to transmit a copy to counsel of record.

March 9, 2018

Dwane L. Tinsley
United States Magistrate Judge

25